**Todd ELLIS, Plaintiff,**

v.

**Pamela KITSMILLER and Brian Kitsmiller, Defendants.**

**No. LR–C–91–165.**

United States District Court, E.D. Arkansas, W.D.

Nov. 5, 1993.

Robert R. Cortinez, II, Cortinez Law Firm, Little Rock, AR, for plaintiff.

Patrick J. Goss, Wright, Lindsey & Jennings, Little Rock, AR, for defendants.

## ORDER

ROY, District Judge.

This case involves an accident wherein the driver of a bicycle struck a young pedestrian. The accident occurred on or about May 30, 1988 on Locust street in North Little Rock. The plaintiff, Todd Ellis, was bicycling with a friend that day and collided with defendant Brian Kitsmiller while the defendant was crossing the street. Brian Kitsmiller was 8 years old at the time. The other defendant is Pamela Kitsmiller, Brian's mother.

Now before the Court is the defendants' motion to dismiss for lack of jurisdiction. Specifically, defendants contend that at all times relevant, Todd Ellis was a citizen of Arkansas for jurisdictional purposes. Therefore, complete diversity between the parties does not exist and this Court lacks jurisdiction to hear the case.[1] 28 U.S.C. § 1332.

■ When jurisdictional allegations are challenged, the party seeking the federal forum bears the burden of establishing diversity jurisdiction by a preponderance of the evidence. *Sheehan v. Gustafson,* 967 F.2d 1214, 1215 (8th Cir.1992), citing *Blakemore v. Missouri Pacific,* 789 F.2d 616, 618 (8th Cir. 1986). Diversity of citizenship is to be determined at the time the complaint is filed. *Blakemore,* citing *Janzen v. Goos,* 302 F.2d 421, 424 (8th Cir.1962). State citizenship, for diversity purposes, requires an individual's physical presence in the state coupled with an indefinite intention there to remain. *Blakemore,* citing *Holmes v. Sopuch,* 639 F.2d 431, 433 (8th Cir.1981).

On Monday, October 18, 1993, the Court held a hearing for the purpose of hearing evidence and oral arguments relating to the citizenship of the plaintiff at the time he filed this action. Having now reviewed that evidence, together with the briefs submitted by the parties, the Court makes these findings of fact and conclusions of law:

■ Plaintiff's complaint was filed on March 19, 1991. In it he alleged that the defendants were citizens of Arkansas (a fact which has never been disputed by anyone) and that he was a citizen of Florida.

The plaintiff was born in Arkansas on or about August 2, 1965. He lived exclusively in Arkansas with his parents his entire childhood. In about 1983 he left high school prior to graduating. In 1985 he attended a private school in Tulsa, Oklahoma in an effort to obtain his diploma. In 1986 he returned to Arkansas and went to work with his father laying carpet.

In June of 1989, the plaintiff moved to Florida with his parents. Mr. and Mrs. Ellis purchased a home in Apopka, Florida where the three of them lived together. After arriving in Florida, Todd obtained an official Florida identification card, issued October 19, 1989 and expiring on his birthday (August 2) in 1993. He never obtained a Florida driver's license. When questioned why at the hearing, he testified he did not feel he needed one since his Arkansas license was still "valid."

While working full time at a restaurant, plaintiff attended nearby Seminole Community College, completing a sort of "pre-enrollment" course in "culinary arts" in July, 1990.

Before the fall semester began, plaintiff's father accepted a position in Little Rock. Todd and his parents moved back to Arkansas, but did not sell the house in Florida. A checking account for all three of the Ellises was left open in Florida, and remains open to this day. However, since the family returned to Arkansas, the account has been the subject of very little activity.[2]

---

1. It is not disputed that defendants are Arkansas citizens for jurisdictional purposes.

2. Copies of three bank statements (for months ending 3–13–91, 4–11–91, and 3–11–93) were

submitted by the plaintiff. Each indicates a single deposit of between $730 and $830, a single automatic debit of between $28 and $33 to pay a life insurance premium, and either one or zero checks drawn on the account that month.

Upon returning to Little Rock with his parents, Todd worked with his father laying carpet. Todd stated in his affidavit that he "was asked to temporarily help my father's business associate with his work, which I did for approximately six months so as to earn money to buy a car that could serve as transportation back to Florida...." It is true that Todd worked six months for Arkansas Floors from October, 1990 until April of 1991. However, it was revealed in deposition testimony that he was fired in April because of his hair. *Deposition of Todd Ellis, 12–16–91,* page 9, lines 22–25.

For approximately six months prior to July, 1991, the plaintiff was living in his own apartment in Little Rock. *Ibid,* at 6, lines 4–16. The complaint was filed on March 19, 1991. Thus, plaintiff was at least a *resident* of Arkansas at the time the complaint was filed, having moved back in September of 1990.

In the latter half of 1991, the plaintiff traveled back and forth several times between Arkansas and Gilbert, Arizona, where he said he sought work. He would stay in Arizona for about two to four weeks at a time, then return to Arkansas. *Id.,* at 5–6. Apparently, it was about this time that his parents moved from Little Rock to Beebe, Arkansas. Plaintiff returned from Arizona for the last time in about September of 1991. His mother was ill with what the plaintiff describes as "chronic fatigue syndrome." He has not been back to Arizona, even until the present time. Furthermore, from the time he moved from Florida with his parents in 1990, until he was fired from his job at Arkansas Floors, the plaintiff never returned to Florida for even a day.

In December of 1991, the senior Mr. Ellis started his own carpet business, WTC. These are the first initials of William, Todd, and Carole Ellis. Todd worked in that business for his father from its inception until April of 1993.

In 1992, the senior Mr. Ellis was diagnosed with terminal cancer. The plaintiff contends that this has required his presence in Arkansas, and that "upon a final resolution of my father's illness, I will promptly return to [the family's house in] Apopka, Florida, and resume my schooling." *Plaintiff's affidavit.*

\* \* \*

The facts of this case suggest that plaintiff's assertion of diversity jurisdiction may be attacked in two ways: 1) when plaintiff moved to Florida with his family, he never became a Florida citizen because while in Florida he never possessed an intention to remain there indefinitely, or 2) even if plaintiff were a Florida citizen at the time he moved back to Arkansas, he then became an Arkansas citizen and remains one today. The Court finds that there is no need to take up the first issue because of the Court's decision on the latter: after Todd returned to Arkansas, he exhibited an intention to remain here indefinitely, thereby becoming an Arkansas citizen. He was still a citizen here in Arkansas when he filed the lawsuit in March of 1991, resulting in a lack of diversity. Thus his cause must be dismissed for lack of jurisdiction.

Divining what a person intended to do is a very subjective evaluation requiring deductions to be made from objective facts and also requiring judgments of credibility. It is no less a difficult task when, as here, one attempts to determine whether a person moved to a new state with the intention to remain indefinitely. However, after considering plaintiff's actions, together with his words, the Court concludes plaintiff had no definite intention to live anywhere but Arkansas once he returned here.

One reason is his failure to return to Florida for any reason during the time after he left there until such time as he was fired from his job with Arkansas Floors. Another is his work history. Though plaintiff has tried to characterize his employment with Arkansas Floors as a temporary thing to raise money to buy a car so he could return to Florida, he did not quit in April of 1991 (one month after he filed this lawsuit), he was fired. When he did leave the state for

The statements were mailed to the parents' home address in Arkansas; the first two to Little Rock and the latter one in 1993 to Beebe.

more than a few days in search of work, it was to Arizona, not Florida, and he always returned to Arkansas. His stated plan was to move to Arizona and support himself while he saved enough money to be able to afford to move to Florida. This makes little sense to the court and does not ring fully credible.

Finally, the Court has considered lesser factors that, when examined in their totality, give credence to the idea that Todd is an Arkansas citizen and has been since returning to Arkansas in 1990. Except from June 1989 until late summer or early fall of 1990, Todd Ellis has lived in Arkansas his entire life. During the time he was in Florida, he never obtained a driver's license there, yet he has had an Arkansas license continuously since some time *prior* to his move to Florida. His car is registered in Arkansas. He pays taxes in Arkansas. Since leaving Florida in 1990, he has never worked, resided, paid taxes, registered an automobile, or done anything similar in Florida. He does not vote in Florida. All things considered, the Court finds that once Todd returned to Arkansas, it was his intention to remain here indefinitely.

Accordingly, it is the holding of this Court that the plaintiff was a citizen of Arkansas at the time this action was filed; therefore diversity of citizenship did not exist at the time the case was filed. It follows that the defendants' motion to dismiss for lack of jurisdiction should be, and hereby is, granted. Plaintiff's alternative request to remand this matter to state court rather than suffer dismissal is denied.[3]

IT IS SO ORDERED.

---

3. The case cited by plaintiff in support of his alternative suggestion that this matter be remanded rather than dismissed, *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), is readily distinguishable from the matter before the Court. The *Cohill* case involved a case that had been filed initially in *state* court and had then been removed to federal court. The issue was whether the federal district court had discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action had been eliminated and only pendent state-law claims remained. On the other hand, and significantly, the case before this Court was never removed from state court, it was filed here. Thus it can not be remanded.